# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| | } | |
| **WILLIAM R. CARLETON, SR.,** | } | **Case No. 05-43548-JJR-7** |
| | } | |
| Debtor. | } | |

———————————————————

| | | |
|---|---|---|
| **VALDA CARLETON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| **v.** | } | **Adv. P. No. 10-40047-JJR** |
| | } | |
| **MARY GAIL CARLETON STRENGTH,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>O P I N I O N</u>

Valda Carleton ("Plaintiff") seeks a judgment declaring that Mary Gail Carleton Strength's ("Strength") claim for a divorce-related property settlement against the Plaintiff's deceased husband, William R. Carleton, Sr. ("Debtor"), was discharged in the Debtor's chapter 7 bankruptcy case. The Plaintiff is entitled to the relief she is seeking from this Bankruptcy Court, but such relief may be insufficient. Regardless of this Court's decision, because of the unusual and unfortunate facts in this case, it appears likely the Plaintiff will suffer an undeserved injustice, and Strength — not as the Debtor's creditor but as his widow — will be the recipient of an undeserved windfall. Such an inequitable result could be avoided if the courts of Alabama recognize an exception to their ill-considered principle of abatement of non-final divorce actions that fails to take into account — at least in this case — the Plaintiff's and the Debtor's justifiable reliance on an interim judgment of divorce that ostensibly dissolved the Debtor's marriage to Strength.

1

<u>Facts</u>

On June 13, 2000, Strength filed a Complaint for Divorce (the "Divorce Action") in the St. Clair County, Alabama Circuit Court (the "Circuit Court").[1]  In the Divorce Action, Strength sought a dissolution of her marriage to the Debtor, an equitable division of their property, and payment of certain debts and her attorney's fees.  No alimony was sought and no children were born of the marriage.  On January 30, 2003, the Circuit Court entered a Final Judgment of Divorce ("Judgment of Divorce").[2]  The Judgment of Divorce dissolved the marriage and specifically required the parties to wait 60 days, or during the pendency of any appeal, before marrying someone else.  Neither party appealed the Judgment of Divorce.

According to the Circuit Court's bench notes[3] a hearing was scheduled for August 5, 2003 "on the issue of property division, alimony[4] & attorneys fees."  Although it appears one or more such hearings were held, there never was a final hearing, and most importantly, there never was a final judgment entered that disposed of Strength's property division claim.[5]

---

[1]A copy of Strength's Complaint was filed as AP Doc. 20.  Reference to a document filed in the Debtor's bankruptcy case, 05-43548, is to a "Bk Doc.___ ," and reference to a document filed in the adversary proceeding, 10-40047, is to an "AP Doc. ___."

[2]A copy of the Final Judgment of Divorce was filed as AP Doc. 22.

[3]A copy of the Case Action Summary that contained the Circuit Court's bench notes regarding proceedings in the Divorce Action through June 23, 2003, was filed as AP Doc. 21.

[4]Strength's Complaint in the Divorce Action did not seek alimony.

[5]A history of the Divorce Action is recited in the Circuit Court's Order dated June 17, 2010, AP Doc. 23.  That Order is further discussed *infra* and is referred to as the "Abatement Order."

2

After his divorce from Strength, the Debtor remarried twice;[6] the last time was to the Plaintiff on December 23, 2004. On October 3, 2005 the Debtor filed for relief under chapter 7 of the Bankruptcy Code;[7] on November 10, 2005 the chapter 7 trustee filed a Report of No Distribution;[8] on February 5, 2008 the Debtor was granted a discharge, without exception; on February 7, 2008 copies of the Discharge Order (BK Doc. 44) were served on all creditors, including Strength c/o her counsel;[9] and on March 23, 2009 the Debtor died intestate. During this sequence of events, there were two additional important occurrences. First, as discussed in more detail below, after receiving three extensions from the Bankruptcy Court, Strength allowed the deadline for excepting her claim from discharge to lapse. And second, after being granted a discharge, but before his death, the Debtor's father passed away, leaving an inheritance to the Debtor — the Debtor went from being a virtual pauper in a "no asset" chapter 7 bankruptcy case to someone of at least some means.

Although Strength and the Debtor were divorced for over six years and the Debtor had been married to the Plaintiff for the better part of five years, following the Debtor's death, Strength filed a motion with the Circuit Court seeking a determination that she was the widow of the Debtor at the time of his death. The Circuit Court granted her motion, and on June 17, 2010 issued an Order (the "Abatement Order") which set aside the Judgment of Divorce. The Abatement Order provided that:

---

[6]The Debtor's second marriage also ended in divorce.

[7]References to the "Bankruptcy Code" or "Code" are to the Bankruptcy Code, 101 U.S.C. § 101, *et seq*, and unless the context indicates otherwise, the symbol "§" is a citation to a section or other subdivision of the Code.

[8]BK Doc. 11.

[9]The certificate of service confirmed that three copies of the Discharge Order were served on Strength's counsel. The address for service is the same as that shown on counsel's brief.

A.     The January 30, 2003 judgment [of divorce] is not final as there was not a complete adjudication of all matters in controversy, including a final determination and distribution of personal property.

B.     The judgment was not a final appealable order pursuant to Rule 54 of the A.R.C.P., as all claims, or the rights or liabilities of all the parties were yet to be decided.

C.     The Court finds . . . Mary Gail Carleton [Strength], is the widow of . . .William R. Carleton, at the time of his death, March 23, 2009. (See *Boudreau v. Slaton,* 9 So. 3d 495).

D.     The motion to set the judgment of divorce aside is hereby granted.

On March 11, 2011 the Abatement Order was affirmed by the Alabama Court of Civil Appeals (the "Appeal Affirmation").[10]  The record does not disclose whether a further appeal to the Alabama Supreme Court is being pursued by the Plaintiff.[11]

The Court of Appeals did not write an opinion; however, it did cite several cases that obviously were intended as authority to support its affirmation of the Circuit Court's Abatement Order.[12]  None of the cited cases involved a party who, like the Debtor, had remarried after the entry

_____

[10]Copies of the Abatement Order and the Appeal Affirmation were filed as AP Docs. 23 and 24, respectively.

[11]It is apparent that at some juncture after the Debtor's death, Plaintiff became a party to the Divorce Action as the administratrix of the Debtor's estate.  Paragraph 12 of the Abatement Order stated that "The alleged wife and/or the administratrix of the [Debtor's] estate, Valda M. Carleton claims she was married to the [Debtor] at the time of his death."  And the Appeal Affirmation is styled "*Valda Carleton, personal representative of the Estate of William Carleton v. Mary Gail Carleton.*"

[12]In the Appeal Affirmation the Court of Appeals cited cases that dealt with abatement of divorce actions when a spouse died before the entry of a final judgment and cases in which the records on appeal was deficient, usually because of the omission of evidence supporting an argument made by the appellant.  This Court did not have access to the record on appeal filed with the Court of Appeals, and cannot determine what deficiencies there were.  Nonetheless, at a

4

of an interim order dissolving the marriage, but died before a final judgment was entered in the underlying divorce action.  In any event, the upshot of the Abatement Order and the authorities cited in the Appeal Affirmation is that a divorce action in Alabama is abated if either spouse dies before

---

minimum, the record on appeal would have included the Abatement Order which set forth the material facts and sequent of events, including the remarriage of the Debtor to the Plaintiff.

Both the Circuit Court and the Court of Appeals cited *Boudreau v. Slaton*, 9 So. 3d 495 (Ala Civ. App. 2008), and the Court of Appeals also cited *Jones v. Jones*, 517 So. 2d 606 (Ala. 1987).  In *Boudreau* the trial court in a divorce action first entered an order stating: "Parties are forever divorced" and reserved all issues regarding property division.  Before the property division issues were adjudicated, the husband died.  The trial court then set aside its order of divorce, holding that the underlying action was abated because the husband died before all issues had been disposed of.  The administrator of the deceased husband's estate appealed to the Court of Civil Appeals, and argued "that because the trial court had entered a judgment 'forever' divorcing the parties . . . it was without jurisdiction to set aside that order because to do so would change the parties' marital status after the husband's death." *Boudreau*, 9 So. 3d at 498.  The administrator further argued that the husband, relying on the order of divorce, had executed a new will removing all references to the first wife, who would be unjustly enriched if she were allowed to collect her elective share of the husband's estate. *Id.* at 497.  Neither argument impressed the Court of Appeals, and citing the Alabama Supreme Court's decision in *Jones v. Jones*, *supra*, affirmed the trial court, and stated:

> Although we recognize that the death of the husband during the pendency of the divorce action and his creation of a new will with the order divorcing the parties in mind creates special problems that have not heretofore been addressed with regard to the law of abatement, we are nevertheless bound by Alabama law, which states that a divorce action abates when a final judgment has not been entered.

*Boudreau*, 9 So. 3d at 499-500.

In *Jones v. Jones*, the trial court had entered a temporary order regarding disposition of the parties' homestead pending a final resolution of the divorce action.  The husband died while the action was pending, and the trial judge dissolved the temporary order and dismissed the action.  The administratrix of the husband's estate appealed, and the Alabama Supreme Court affirmed the trial court's holding that the husband's death abated the underlying divorce action and nullified the temporary restraining order.  The court stated: "An action for divorce, alimony, attorney fees, and an equitable division of marital property in which there has not been a final judgment does not survive the death of a party." *Id.* at 608.  Accord, *Thomas v. Thomas,* No. 1081447, 2010 WL 2797392 (Ala. July 16, 2010).

5

the issuance of a final order disposing of the parties' property division claims, and the abatement vitiates an interim order that dissolved the parties' marriage. In the instant case, although the Judgment of Divorce carried the moniker of a final order—it was entitled "*Final* Judgment of Divorce" — a division of property had never been adjudicated or otherwise resolved, so a final judgment concluding the Divorce Action had never been issued by the Circuit Court. Under these circumstances, the Circuit Court, and apparently the Court of Appeals, treated the Judgment of Divorce as an interlocutory decree, and nullified the entire Divorce Action.[13] It seems the two Alabama courts intended to return the parties to their respective positions held immediately before the Divorce Action was filed, which would be impossible. There can be no turning back the clock — following the Circuit Court's issuance of the Judgment of Divorce, the Debtor married and divorced his second wife, married a third wife (the Plaintiff), was granted a bankruptcy discharge, received an inheritance from his father, and died.[14] Innocently caught in the middle of the resulting judicial debacle is the Plaintiff.

## SUMMARY JUDGMENT

This adversary proceeding had, for the most part, remained inactive since it was commenced. A status conference was held at the Court's request and the parties were directed to file briefs and submissions supporting their respective positions. Although not formally designated as such, the

---

[13]The Judgment of Divorce prohibited the parties from remarrying for 60 days or during the pendency of an appeal, which leaves the impression that, like its name – *Final* Judgment of Divorce – the Circuit Court intended for the Judgment of Divorce to be an appealable judgment, made final pursuant to Rule 54(b) of the Alabama Rules of Civil Procedure. If the judgment was not appealable the prohibition against remarrying during an appeal was meaningless.

[14]Strength also may have remarried. Her last name, at least as shown in this adversary proceeding, is no longer Carleton.

6

Court treated the parties' briefs and submissions as motions for summary judgment made pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. If either of the parties objects to the Court's treatment of their briefs and submissions as motions for summary judgment, she should file an objection to that effect within seven days of the entry of this Opinion. If a timely objection is filed, this adversary proceeding will be forthwith set for trial — a trial should not take long, as there appear to be no disputed material facts. If neither party files a timely objection, the Court will enter an Order consistent with this Opinion.

Bankruptcy Rule 7056 directs that Rule 56 of the Federal Rules of Civil Procedure is applicable to bankruptcy adversary proceedings. A court may grant summary judgment to a moving party when that party demonstrates "there is no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Bankr. Rule 7056(c). In considering the merits of a motion for summary judgment, the judge's function is not to determine the truth of the matter asserted or the weight of the evidence, but to determine whether the factual disputes raise genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In making this determination, the facts are to be considered in a light most favorable to the non-moving party. *Id*.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Allen v. Board of Public Educ. For Bibb Co*., 495 F.3d 1306 (11th Cir. 2007).

<u>CONCLUSIONS OF LAW</u>

The facts necessary for a disposition of this adversary proceeding under Bankruptcy Rule 7056 are not disputed. Recall that before the Debtor's bankruptcy the Circuit Court entered an order dissolving his marriage to Strength, but it never issued an order with respect to Strength's claim for a division of the parties' property. Thus, this Bankruptcy Court must determine the effect of the

7

Debtor's bankruptcy discharge on Strength's property division claim that was never finally adjudicated by any court.

The Debtor's bankruptcy case was filed on October 3, 2005, before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") went into effect.[15]  Under pre-BAPCPA Code § 523(c)(1), a creditor holding a claim for division of property arising in a divorce proceeding[16] was required to file an adversary proceeding in the bankruptcy court — not in a state court — seeking a declaration that such claim should be excepted from the discharge otherwise granted to the debtor under § 727.[17]  And under Bankruptcy Rule 4007(c), an adversary proceeding seeking such a declaration must have been filed no later than 60 days after the first date set for the § 341(a) meeting of creditors.  Rule 4007(c) further provided that on motion of the claimant filed before the expiration of the 60-day deadline, an extension may be granted by the bankruptcy court.

The Debtor obviously expected the Plaintiff's claim for a division of property to be administered in his bankruptcy case.  In his schedules — Schedule F — he listed Strength's claim

---

[15]Pub. L. No. 109-8, § 1501(a).  For the most part, BAPCPA went into effect October 17, 2005.  Sections of the Bankruptcy Code that were in effect before the effective date of BAPCPA are referred to as "pre-BAPCPA § _____ ."

[16]Under the pre-BAPCPA Code, claims for property divisions fell under pre-BAPCPA § 523(a)(15).  *See Cole v. Cole (In re Cole)*, AP No. 07-4037, 2008 WL 1767733, at * 2 (Bankr. E.D. Tex. April 15, 2008).

[17] *In re Lewis*, 423 B.R. 742, 755 (Bankr. W.D. Mich. 2010) ("Under pre-BAPCPA bankruptcy law, because of the interplay 28 U.S.C. § 1334 and § 523(c), the state court could . . . *not* hear and decide whether a property settlement debt was nondischargeable . . . ."); *Colorado West Transp., Inc. v. McMahon*, 380 B.R. 911, 917 (N.D. Ga. 2007) (citations omitted) ("[A] fundamental policy in bankruptcy law is to provide a 'fresh start' to the 'honest but unfortunate debtor.'. . . Accordingly, § 523(c) vested exclusive jurisdiction to the bankruptcy courts over dischargeability proceedings in order to 'stop[ ] creditor abuse arising because debtors could not defend lawsuits and hav[e] bankruptcy courts develop expertise in applying federal law.'").

8

as a "property settlement in divorce" and in his statement of financial affairs he disclosed a pending lawsuit filed against him by Strength as "divorce granted between parties, property settlement pending." Strength does not dispute that she received notice of, and participated in the Debtor's bankruptcy case. Indeed, on at least three occasions, either on Strength's motion or by consent of the parties (i.e. Strength and the Debtor), the Court extended the Bankruptcy Rule 4007(c) deadline for filing an adversary proceeding under § 523(c). Significantly, the final extension expired January 24, 2008 with no further request for an extension by motion, consent or otherwise. Thus, on February 5, 2008, the Court entered an Order granting the Debtor a discharge pursuant § 727.

Although Strength's claim may have been unliquidated, contested and contingent, it was nonetheless a "claim" under § 105(5). *In re Emelity*, 251 B.R. 151, 154 (Bankr. S.D. Cal. 2000). And because that claim was for a division of property (i.e. property settlement), not alimony, maintenance or support, it fell within pre-BAPCPA § 523(a)(15), and was subject to being discharged unless Strength was successful in having it excepted from discharge pursuant to pre-BAPCPA § 523(a)(c) in a bankruptcy adversary proceeding commenced before the deadline set by Bankruptcy Rule 4007(c).[18] No adversary proceeding was filed by Strength, and her claim for a division of property was discharged pursuant to § 727(b). *Tapper v. Tapper*, 641 So. 2d 823, 824 (Ala. Civ. App. 1994).

---

[18]Alimony, maintenance and support fell under pre-BAPCPA § 523(a)(5). It is easy to understand why parties and their counsel often had difficulty determining whether a claim arising out of a divorce action fell under § 523(a)(5) or (a)(15). A scrivener's error obviously attributed to such difficulty was made by the Plaintiff in her Complaint (AP Doc. 1) filed in this adversary proceeding. She correctly identified Strength's claim as one for a property settlement, but incorrectly referred to § 523(a)(5), probably because post-BAPCPA § 523(a)(5) includes claims that are "domestic support obligations," terms defined at length in § 101(14A). In any event, notwithstanding the Plaintiff's error, for the purpose of this Opinion, the Court treated Strength's claim as one falling under pre-BAPCPA § 523(a)(15).

9

Perhaps Strength allowed the deadline for filing an adversary proceeding under § 523(c) to expire because there was little to be gained from pursuing a property division from a former spouse whose assets, at that time, were insufficient to fund even a minuscule distribution to creditors in his bankruptcy case — a "no asset" chapter 7 case. Regardless of why Strength allowed the deadline to lapse, one thing is for certain, her property settlement claim was discharged. Whatever undone business was pending in the Circuit Court with respect to that claim should have been forthwith dismissed. Any further action regarding that claim, other than its dismissal, was a violation of the discharge injunction imposed by Code § 524(a)(2),[19] which provides: "A discharge in a case under this title . . . operates as an injunction against the commencement or *continuation* of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor. . . ."[20] The Alabama Court of Civil Appeals recognized in *Tapper v. Tapper, supra*, that "Pursuant to 11 U.S.C. § 727(b), a debtor who has been discharged in bankruptcy is no longer liable for debts that arose before the date of the order of relief. Thus, property settlements and obligations to pay alimony in gross are dischargeable." 641 So. 2d at 824. Efforts to enforce a pre-BAPCPA property settlement claim after it has been discharged may be enjoined, and sanctions may be imposed against the claimant for contempt. *In re Fluke*, 305 B.R. 635 (Bankr. D. Del 2004); *In re Tostige*, 283 B.R. 462 (Bankr. E.D. Mich. 2002); *Brabham v. Bradham (In re Bradham)*, 184 B.R.

---

[19]§ 524(a) was not amended by BAPCPA.

[20]Any attempt to disguise a claim for a property settlement as an *in rem* action against a debtor's property is likewise a violation of § 524(a)(2). "Nor may a creditor proceed *in rem* against a property interest of the debtor if the creditor had no lien before the bankruptcy case and the debtor's personal liability has been discharged." *Collier on Bankruptcy* ¶ 524.02[2], 15th ed. rev. See also, *In re Paeplow*, 972 F.2d 730 (7th Cir. 1992). Strength was an unsecured creditor and did not hold a lien on the Debtor's property before he filed his bankruptcy case.

10

476, 485-86 (Bankr. D.S.C. 1995) (quoting *Collier Family Law and the Bankruptcy Code* ¶ 6.10 Release No. 4, April 1994) ("It is clear that once a property settlement obligation is discharged in bankruptcy, it cannot be reimposed by the state court, nor may a new property division be imposed."). Strength was fully aware her claim had been discharged — her counsel was served with copies the Discharge Order — yet she allowed her discharged claim to remain pending in the Circuit Court. Due to her indolence, the defunct claim was in procedural limbo for more than 12 months following the Debtor's discharge and before his death, the later event providing the traction for Strength's motion that lead to the abatement of the Divorce Action by the Circuit Court. If Strength had obeyed the Discharge Order, and complied with Code §§ 524(a) and 727(b), her claim would have been dismissed without delay, and whatever *de minimis* details remained in the Divorce Action could have been concluded and a final judgment entered by the Circuit Court.[21] But Strength ignored the Discharge Order and the § 524(a) discharge injunction. Her passive impropriety, coupled with a legal fiction sanctioned by the courts of Alabama elevated her position from a discharged creditor to a widow who may inherit a statutory share of the Debtor's estate, now enriched by an inheritance from his father.[22]

No doubt, the Debtor should have taken steps to have the property settlement claims

---

[21]In the Abatement Order the Circuit Court described the issues that remained outstanding in the Divorce Action when the Debtor died. Most appear to have been issues related to the property settlement and would have become moot upon a recognition of the discharge of Strength's property division claim, e.g. the father's intervention asserting his ownership to property that apparently Strength claimed belonged to the Debtor and should be taken into account for her portion of the property settlement.

[22]The intestate share of a surviving spouse is set forth in Ala. Code (1975) § 43-8-41. The amount of such share depends on whether the deceased spouse left surviving issue or parents, and varies from no less than one-half to the entire estate.

11

dismissed in the Divorce Action and a final judgment entered by the Circuit Court.[23] Nonetheless, the Debtor's failure to promptly act did not reinstate Strength's discharged claim, and the Debtor's failure to act was not an excuse for Strength to allow her claim to linger for over a year. The Seventh Circuit Court of Appeals had the following to say about a debtor's failure to promptly raise his bankruptcy discharge as a defense in a state court collection suit:

> Finally, the creditors argue that we should abstain from enjoining the state court proceeding under principles of comity. Specifically, they contend that Paeplow [the debtor] has waived his right to invoke the ancillary jurisdiction of this Court by failing to timely plead discharge as a defense in the state court proceedings. Paeplow's failure to do so was an imprudent litigation decision, but we agree with the district court that Paeplow did not waive the protection afforded him as a discharged debtor under § 524 by his inaction in state court. No trial has been held in Indiana state court, nor has a judgment been entered against him there, and we decline to withdraw our ancillary jurisdiction in this matter on grounds of comity.

*In re Paeplow*, 972 F. 2d 730, 738 (7th Cir. 1992).

In this adversary proceeding, the Plaintiff has asked only for a determination that Strength's claim was discharged in the Debtor's bankruptcy case, which this Court is prepared to do.[24] Although the Court has found that Strength's claim for a division of property was discharged, it has no jurisdiction to determine who should be considered the Debtor's widow — that issue apparently

---

[23]Why those steps were not taken might be a question for the Debtor's counsel to answer.

[24]What makes all this so troubling is that Strength is able to assert she is now the Debtor's widow only because she never dismissed her property settlement claim. It appears that by keeping her discharged claim alive, at least in the Circuit Court, Strength was able to avoid a final judgment being entered in the Divorce Action. We don't know whether Strength intentionally failed to dismiss the her claim in Circuit Court, or its continuity was the consequence of a crowded and slow Circuit Court docket, or the Debtor, and perhaps Strength, having inattentive lawyers. Whatever the underlying reason for the claim not being dismissed, is Strength now attempting to do an "end run" around the discharge injunction and collect a discharged debt? S*ee Collier on Bankruptcy*, ¶ 524.02[2] (15th ed. rev.).

has been decided in Strength's favor by the Circuit Court and Court of Appeals.  One would hope

that the Court of Civil Appeals' affirmation of the Abatement Order is being appealed to the

Alabama Supreme Court, and that higher court will make an exception to the Alabama common law

governing abatement of non-final divorce actions — an exception that will recognize the continued

validity of a interim order dissolving a marriage when one of the parties has remarried.  Otherwise,

if the Abatement Order is allowed to stand, it appears imminent that a judicially sanctioned injustice

will be perpetrated against the Plaintiff, the true widow, and Strength will receive a windfall in spite

of her failure to abide by the Bankruptcy Code and Rules.[25]

Dated:  April 25, 2011

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

[25]What neither the Circuit Court nor the Court of Appeals addressed—the elephant in the room, if you please—is that Strength's marriage to the Debtor was unequivocally dissolved by the Circuit Court, and relying on such dissolution, the Debtor remarried twice, the last time to the Plaintiff.  Was the Debtor guilty of bigamy?  If children had been born to the Debtor and Plaintiff, or to the Debtor and his second wife, would those children now be considered illegitimate?  Sarcasm aside, we do know that after receiving a discharge from all debts (including Strength's property settlement claim) in a "no asset" chapter 7 bankruptcy case, the Debtor inherited property from his father.  It is safe to assume that the Debtor and Plaintiff not only relied on the Debtor's divorce from Strength when they married, but also on the discharge of Strength's property settlement claim to pave the way for Plaintiff to inherit her husband's ameliorated estate.  And what about the dissolved second marriage that intervened between the first and third marriages at issue in this adversary proceeding?  If a division of property and a final judgment were issued in the divorce proceeding that ended the second marriage, does Strength have claims against the second ex-wife for a share of her property?

In Charles Dickens' *Oliver Twist*, the character Mr. Bumble is informed that "the law supposes that your wife acts under your direction."  Mr. Bumble replies "If the law supposes that . . . the law is a [sic] ass — a [sic] idiot.  If that's the eye of the law, the law is a bachelor; and the worst I wish to the law is that his eye may be opened by experience — by experience."  Mr. Bumble might have had the same to say about the *law of abatement* as applied by Alabama courts under the facts in this case.

13